**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **NADIA A. AYYASH,** <br><br> **Plaintiff,** <br><br> **vs.** <br><br> **NUETERRA HEALTHCARE MANAGEMENT, LLC,** <br><br> **NUETERRA HEALTHCARE HEALTH AND WELFARE BENEFIT PLAN, AND** <br><br> **HEATHER MORTON** <br> **Defendants.** | § § § § § § § § § § § § § § | **CIVIL ACTION NO.** ____________ |

# PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES, Nadia A. Ayyash, hereafter called "Ayyash" or "Plaintiff" complaining of and about Nueterra Healthcare Management, LLC ("Nueterra"), Nueterra Healthercare Health and Welfare Benefit Plan (the "Plan"), and Heather Morton ("Morton") hereinafter called "Defendants", and for cause of action shows unto the Court the following:

## PARTIES

1. Plaintiff Nadia A. Ayyash is an individual residing in Tarrant County, Texas. Ayyash was employed with Nueterra as a registered nurse. She was a participant in the Plan within the meaning of 29 U.S.C. § 1002(7).

2. **Defendant Nueterra Healthcare Management, LLC** is a corporation with a principal place of business in at **11221 Roe Ave., Suite 320, Leawood, Kansas 66211-1878**. Nueterra has a business location in Texas located at 6316 Precinct Line Road, Hurst, Texas

76054. Nueterra has registered in Texas with the Secretary of State to transaction business in Texas. On information and belief, Defendant Nueterra Healthcare Management, LLC is the named fiduciary of the Plan under 29 U.S.C § 1102(a)(2). Nueterra is the sponsor of the Plan under 29 U.S.C. §1002(16)(B), administrator of the plan under 29 U.S.C. §1002(16)(A), and a party in interest to the Plan under 29 U.S.C §1002(14). Pursuant to 29 U.S.C § 1002(21), Nueterra is and was the fiduciary to the Plan because it exercises discretionary authority or discretionary control regarding management of the Plan, exercises authority or control regarding management or disposition of the Plan's assets, and/or has discretionary authority or discretionary responsibility in the administration of the Plan. **Defendant Nueterra Healthcare Management, LLC may be served by serving C T Corporation System, its Registered Agent authorized to accept service at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.**

3. Defendant **Nueterra Healthcare Health and Welfare Benefit Plan** is an employee benefit welfare plan created pursuant to Employee Retirement Income Security Act ("ERISA") Section 3(1), 29 U.S.C. §1002(1) and offered by Nueterra for the benefit of its employees. Defendant **Nueterra Healthcare Health and Welfare Benefit Plan** may be served by serving, **Daniel Saale, CFO**, its designated agent for legal service at **11221 Roe Ave., Suite 320, Leawood, Kansas 66211-1878**.

4. **Defendant Heather Morton** was at all times relevant to this Complaint a Manager employed with Nueterra Healthcare Management, LLC. Defendant Morton may be served with process at her home located at **2708 Ferdinand, Grand Prairie, 75054**.

## I. <u>JURISDICTION</u>

5. This action arises under the Employee Retirement Income Securities Act (ERISA), 29 U.S.C. §§ 1001, et seq., Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. § 1981, 29 U.S.C. §§ 1161 – 1169, Wrongful Discharge, Fraud, Negligent Hiring under Texas Law. The Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over state law claims discussed below under 28 U.S.C. Section 1367(a) because they arise out of the same case or controversy.

## II. VENUE

6. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b), as this is the judicial district in which a substantial part of the events or omissions giving rise to the asserted claims occurred. Further, the exercise of personal jurisdiction comports with Due Process under the United States Constitution.

## III. INTRODUCTION

7. This is an action for money damages and other equitable relief brought pursuant multiple provisions of federal and Texas state law to include 29 U.S.C. §§ 1132(a) and (c); 29 U.S.C § 1161 et seq.; 42 U.S.C §§ 2000 et seq., as amended by the Civil Rights Act of 1991; 42 U.S.C. § 1981(a) based on the discrimination that Ayyash faced from Nueterra and Morton; breaches of fiduciary duties by Nueterra and the Plan; Negligent hiring by Nueterra; fraud by Nueterra and Morton; and wrongful and constructive discharge of Ayyash from employment with Nueterra.

## IV. FACTS

8. Ayyash is an Arab/Middle Eastern female. She has been a licensed Registered Nurse in Texas since February 14, 2012. She loves her profession and working in pediatrics due to her love and concern with the medical and overall well-being of children. Ayyash takes her career and responsibilities to provide appropriate medical care very seriously.

9. Ayyash was initially employed with Nueterra, at their facility located at 6316 Precinct Line Road, Hurst, Texas 76054, from October 2013 through August or September 2014 when

she left for a travel nursing opportunity. At the time of Ayyash's departure from Nueterra, she left on good terms. Ayyash returned to employment with Nueterra in February 2015 and began their "weekend plan" sometime in March 2015. This location is more commonly and publically known as "Cook Children's Northeast Hospital."

10. Ayyash was employed as a registered nurse to provide for the care and treatment of patients in the Urgent Care Center and Emergency Department ("ED") on the "weekend plan." Nueterra refers to the weekend plan as an employment agreement. However, the agreement contains express language stating that Ayyash' employment is "at-will" meaning that her employment could be terminated by either Ayyash or Nueterra at any time and for any reason.

11. During Ayyash's work shift on Friday, May 8, 2015, the emergency department ("ED") experienced insufficient staffing presented safety concerns for both patients and staff due to Nueterra's negligence in appropriately staffing the ED. Heather Morton ("Morton") was Ayyash's manager in the ED.

12. Morton, along with an employee named Kelly Johnson, worked on this particular Friday night until at least 8:00pm. Morton and Kelly were aware that the ED unit had insufficient staffing and did not have a medic on duty. As of around 11:30pm that Friday night, there were still only two nurses on staff without a medic. There were still 8 UCC patients waiting to be triaged with new ED patients continuing to enter the ER. A few staff members were scheduled to be off work, but graciously volunteered to stay an additional 30 to 45 minutes to assist Ayyash and another nurse on duty.

13. A new ED patient arrived that required a Peripheral Intravenous ("PIV") placement where the nurses needed assistance with holding the child. In a last resort effort to assist in providing care, a non-clinical staff member assisted with comforting and distracting the child so

the PIV placement could be completed. Later, while Ayyash was in CT with that patient, it left only the other nurse on duty, Joan, as the only clinical staff member in the ED during that time.

14. The ED had been experiencing higher acuity patients as well as a lack of staffing and had yet to address the issue, which caused serious concern for Ayyash and other members of the ED.

15. On Saturday, May 9, 2015 Ayyash sent an email to her Manager, Heather Morton, Jan Milligan ("Milligan") and Kyllan Cody ("Cody") expressing her concerns regarding serious safety and staffing concerns that occurred during her work shift on Friday, May 8, 2015, as described above. Jan responded to the email stating that "we are reviewing our staffing plan and in the process of hiring additional staff … we are reviewing time of shift hours."

16. However, on Sunday, May 10, 2015, Charge Nurse Amanda Ross ("Ross"), a white female, sent an email to Milligan, Cody, and Morton about understaffing issues as it relates to the higher acuity patients they are treating during Saturday night's shift. The circumstances were so dire, the ED staff had to call 911 to assist with a patient.

17. On Friday, May 15, 2015, Ross sent another message to Milligan and Cody expressing her concerns about staffing, census, and acuity. Ross furthered discussed the concerns with Morton who just giggled and stated "she's not used to having a lot of staff where she worked." Dr. Cocjin joined Ross in the discussion with Morton and both concluded the Morton didn't understand the severity of the issues.

18. A few days after Ayyash complained about the safety and staffing concerns, Morton emailed her on May 12, 2015 regarding a 4 week notice to end the "weekend program." After an exchange of emails between Ayyash and Morton, the two agreed to meet on May 14, 2015 to discuss Ayyash's concern.

19. Morton and Ayyash met at 6:00am on May 14, 2015. During the meeting with Morton, Ayyash reemphasized her safety concerns and the need to protect her nursing licensure due to negligence of Nueterra. During their meeting, Morton agreed that Ayyash could change her work status to PRN work status, as this would allow Ayyash to continue working, but in a different capacity that would minimize her risk and exposure to unsafe issues and lack of staffing.

20. Per the verbal agreement with Ayyash and Morton and at Morton's request, Ayyash notified Morton of the desire to change her work status from part-time to PRN as of May 14, 2015. Ayyash's written notice specifically stated "It is my intent to stay with Cook Children's NEH at this current time in a PRN role, as I do find much joy and satisfaction in care for the children at this facility."

21. Contrary to their agreement, Morton emailed Ayyash on May 18, 2015 (4 days after their meeting) informing her that a PRN position is not available and her *resignation* would be processed as a full resignation, meaning as of May 14, 2015 Ayyash would no longer be considered to be employed with Cook Children's Northeast Hospital *in any capacity*. At the time Morton sent the email to Ayyash, she was on approved time off, out of the state, and without immediate access to email or cell phone.

22. On information and belief, Morton knew or reasonably should have known that a PRN position was not available at the time she made the agreement with Ayyash. Morton owed a duty to Ayyash to be truthful in their discussions as Ayyash detrimentally relied on their discussions.

23. Prior to Morton's agreement with Ayyash, Morton with particularity had favored whites and male employees over Ayyash. More specifically, when time off requests or schedule change

requests, were made by white or male employees under Morton's supervision she would approve their requests over the requests of Ayyash.

24. Morton knew at the time of her discussions with Ayyash, that she no longer wanted Ayyash to work at Nueterra's facility in Hurst, Texas.

25. Although Nueterra's claims it was ending its "weekend program," they still maintained a need for part-time pediatric registered nurses to work in the ED, similar to the position in which Ayyash was employed. Attached as **Exhibit A**, is a job posting for a Pediatric Emergency RN (part-time). As of May 25, 2015, the job posting was listed on Cook Children's website and at least one other employment website, www.indeed.com. **Exhibit A** is hereby incorporated by reference.

26. Morton's conduct further violates Nueterra's Anti-retaliation policy which prohibits retaliation against employees for making good faith disclosure of facility related misconduct ... for ***reporting a safety complaint*** … and for participating in any protected employment related activity. Nueterra's anti-retaliation policy is attached as **Exhibit B** and is hereby incorporated by reference. Nueterra failed to follow and enforce its own anti-retaliation policy.

27. Morton repeatedly harassed Ayyash about her work schedule prior to, during and after Ayyash filed her safety complaint. After Ayyash filed the safety complaint, Morton took further actions that led to Ayyash's constructive discharge from Nueterra. This is clearly an act of retaliation against Ayyash.

28. Morton left several voicemails for Ayyash:

a. Voicemail on May 1, 2015 to discuss her schedule and weekend plans;

b. Voicemail on May 6, 2015 informing Ayyash that she was the person putting the department in hardship in July 2015."

c. Voicemail on May 11, 2015 stating "it is imperative we talk today, I need to find out about some of your times you're requesting."

d. Voicemail on May 15, 2015, "need clarification."

29. Morton's actions has caused harm to Ayyash's professional reputation as well as financial harm due to loss of income from Nueterra.

30. At all times during Ayyash's employment with Nueterra, Morton was the Manager of the ED and acted as an agent of Nueterra.

31. The termination of Ayyash's employment with Nuterra is a qualifying event as defined under 29 U.S.C. §1163.

32. Despite terminating Ayyash's employment on May 14, 2015, the Plan did not send Ayyash a timely election notice to continue health benefits pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"). This notice was not sent to Ayyash until nearly four (4) months later, on September 11, 2015 (letter was dated on this date). Although Nueterra and the Plan alleged to have sent the COBRA notice to Ayyash on August 28, 2015, they did not.

33. Under COBRA, Ayyash should have been notified of her COBRA rights within thirty (30) days of her termination pursuant to 29 U.S.C. § 1166. This means that a COBRA notice should have been sent by June 14th, 2015, but it was not.

34. Nueterra, as the Plan's fiduciary, failed to monitor to ensure that the Plan timely notified Ayyash of her COBRA rights. Nueterra further breached its duty of loyalty to Ayyash as a participant and/or beneficiary under the Plan. Nueterra has a responsibility to discharge its

duties with respect to the Plan solely in the best interests of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries with the care, skill, and prudence of a prudent man/person under similar circumstances.

35. Further, Nueterra failed to the follow the Plan documents governing the Plan in accordance with 29 U.S.C. §1104(a)(1)(D).

36. Pursuant to 29 U.S. §1109(a) Nueterra as fiduciary should be held liable for its breaches of fiduciary duties owed to Ayyash.

37. Ayyash filed a Charge with the U.S. Equal Employment Opportunity Commission ("EEOC") on June 23, 2015 on the basis of Race, Sex, and Retaliation. The Charge was filed within three-hundred days of the acts complained of herein and Ayyash's complaint was filed within ninety days of Ayyash's receipt of the EEOC's issuance of a right to sue letter.

38. Nueterra was aware of the filing of the Charge and on information and belief, purposefully failed to carry out its fiduciary duties to notify Ayyash of her COBRA rights due to the ongoing disputes between the parties surrounding her termination of employment and Ayyash's complaint filed with the Texas Workforce Commission for unemployment benefits.

39. Nueterra did not send out the COBRA notice until they were contacted by the U. S. Department of Labor – Employee Benefits Security Administration (EBSA). Even then it took Nueterra and the Plan up to an additional two weeks to send the notice out to Ayyash.

40. Ayyash has exhausted all administrative remedies prior to the filing of this lawsuit.

## V. CAUSES OF ACTION UNDER 42 U.S.C. § 2000e et seq. AGAINST DEFENDANT NUETERRA HEALTHCARE MANAGEMENT, LLC

41. Paragraphs 1 – 40 set forth above are incorporated herein by reference.

42. Defendant, Nueterra, by and through their employees and agents, individually and in concert with each other, discharged and otherwise discriminated against Ayyash for exercising rights she was entitled to as it relates to her employment and filing a safety complaint.

## VI. CAUSES OF ACTION UNDER 42 U.S.C. § 1981 AGAINST DEFENDANTS NUETERRA HEALTHCARE MANAGEMENT, LLC AND HEATHER MORTON

43. Paragraphs 1 – 40 set forth above are incorporated herein by reference.

44. Defendant, Nueterra, by and through their employees and agents, individually and in concert with each other, discharged and otherwise discriminated against Ayyash.

45. Defendant, Morton, as Ayyash's manager, discriminated against Ayyash and intended to discriminate against Ayyash, which served as a motivating and determinative factor in Morton's decision to terminate Ayyash's employment with Nueterra.

46. Ayyash engaged in activity protected under Section 1981 and was subjected to materially adverse action at the time and after the protected activity took place. Ayyash was retaliated against by Defendants Nueterra and Morton. On information and belief, Morton either made or participated in the decision to terminate Ayyash's employment with Nueterra.

## VII. CAUSES OF ACTION UNDER EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 (ERISA), 29 U.S.C. § 1001, et seq. AGAINST DEFENDANT NUETERRA HEALTHCARE MANAGEMENT, LLC AND NUETERRA HEALTHCARE MANAGEMENT HEALTH AND WELFARE BENEFIT PLAN

47. Paragraphs 1 – 40 set forth above are incorporated herein by reference.

48. Defendants Nueterra and the Plan breached its fiduciary duties under the Plan to administer plan benefits to Ayyash in accordance with the provisions under the Plan's governing documents.

49. Specifically, the Plan's administrator and fiduciaries failed to supply required notices

under COBRA to Ayyash, considering the timing and circumstances of the termination of Ayyash's employment.

## VIII. CAUSES OF ACTION FOR VIOLATIONS OF COBRA, 29 U.S.C. §§ 1161 – 1169 AGAINST DEFENDANT NUETERRA HEALTHCARE MANAGEMENT, LLC AND NUETERRA HEALTHCARE MANAGEMENT HEALTH AND WELFARE BENEFIT PLAN

50. Paragraphs 1 – 40 set forth above are incorporated herein by reference.

51. Ayyash suffered a qualifying event under ERISA § 603, 29 U.S.C. § 1163(2) when she was terminated from her employment on May 14, 2015.

52. By failing to provide to provide a COBRA notice to Ayyash within thirty (30) days of her termination, Defendants violated ERISA § 606, 29 U.S.C. §1166.

53. As a result, Ayyash has suffered damages as set forth herein. Additionally, she is entitled to the daily penalty of $110.00 per day as set forth in ERISA §502(c)(1), 29 U.S.C. §1132(c)(1) for Defendants failure to issue the appropriate and timely COBRA notice as required by ERISA, the reimbursement of all benefits that Plaintiff would have received if not for Defendants illegal conduct, and for such other relief as the Court may deem just, proper, and appropriate in the circumstances of the case.

## IX. CAUSES OF ACTION FOR NEGLIGENT HIRING OF HEATHER MORTON AGAINST DEFENDANT NUETERRA HEALTHCARE MANAGEMENT, LLC

54. Paragraphs 1 – 40 set forth above are incorporated herein by reference.

55. Defendant Nueterra owed Ayyash a due to hire, supervise, train, or retain competent employees. Nueterra breached that duty when they hired Defendant Morton. Morton was incompetent and on information and belief, Defendant Morton had an unstable employment history. Nueterra either knew or should have known this information prior to hiring Morton.

Nueterra has a legal duty to protect other employees and the public by inquiring into the competence and qualifications of a prospective employee.

56. Nueterra has a legal duty to use ordinary care in adequately supervising its employees, which it failed to do with Morton. Nueterra further has a legal duty to us ordinary care in adequately training its employees, which it failed to do. It was foreseeable that Nueterra's failure to execute its legal duties to hire, supervise competent employee would result in injuries similar to those sustained by Ayyash.

57. Nueterra's breach approximately caused the injuries and damages sustained by Ayyash.

## X. CAUSES OF ACTION FOR FRAUD AGAINST DEFENDANT HEATHER MORTON AND NUETERRA HEALTHCARE MANAGEMENT, LLC

58. Paragraphs 1 – 40 set forth above are incorporated herein by reference.

59. Defendant Nueterra may be held vicariously liable for the fraudulent act of its employee if the employee was acting within the scope of employment. Defendant Morton was acting with the scope of her employment when she made intentional misrepresentations to Ayyash regarding the availability for a PRN position. Further, Morton offered the PRN position to Ayyash on the condition that Ayyash put in a written request to relinquish her part-time position and switch to a PRN position. Ayyash complied to Morton's request and performed, only for Morton to later inform Ayyash that there were no available PRN positions and her resignation would be processed as a full resignation from Nueterra.

60. Ayyash is entitled to actual damages and exemplary damages from Defendants Nueterra and Morton.

## XI. CAUSES OF ACTION FOR WRONGFUL DISCHARGE AGAINST DEFENDANT NUETERRA HEALTHCARE MANAGEMENT, LLC

61. Paragraphs 1 – 40 set forth above are incorporated herein by reference.

62. Defendant, Nueterra, by and through their employees and agents, individually and in concert with each other, wrongfully discharged and otherwise discriminated against Ayyash in violation of Title VII Civil Rights Act of 1964, as amended, which is an exception to the employment at will doctrine.

## XII. DAMAGES

63. Ayyash sustained the following damages as a result of the actions and/or omissions of Defendants described hereinabove:

a. All reasonable and necessary Attorney's fees incurred by or on behalf of Plaintiff;

b. Back pay from the date that Plaintiff was terminated and interest on the back pay in an amount to compensate Plaintiff as the Court deems equitable and just;

c. All reasonable and necessary costs incurred in pursuit of this suit;

d. Prejudgment interest;

e. Loss of earnings in the past;

f. Loss of earning capacity which will, in all probability, be incurred in the future; and

g. Loss of benefits.

h. Emotional distress;

i. Loss of enjoyment of life;

j. Mental anguish;

k. Monetary loss;

l. Personal humiliation;

m. Front pay;

n. Exemplary damages against all Defendants.

## XIII. JURY DEMAND

62. Plaintiff respectfully requests a trial by jury.

## XIV. PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Nadia Ayyash, respectfully prays that all Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendants for damages in an amount within the jurisdictional limits of the Court; together with interest as allowed by law; costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

Respectfully submitted,

_____/s/ Lantis G. Roberts___________________

Lantis G. Roberts
State Bar No. 24057463
E-Mail: Lantis@kreativelaw.com

LAW OFFICE OF LANTIS G. ROBERTS, PLLC
1502 Houston Street, Suite 108
Grand Prairie, Texas 75050
Tel. (817) 768-1819
Fax (817) 704-4529
**ATTORNEY FOR PLAINTIFF**
**NADIA A. AYYASH**